IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| KENNETH GARY COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 114-241 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Kenneth Gary Cooper appeals the decision of the Acting Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I.    BACKGROUND

Plaintiff applied for DIB on March 28, 2013, alleging a disability onset date of March 21, 2013. Tr. ("R."), pp. 21, 197-203. Plaintiff was fifty-two years old at his alleged disability onset date and was fifty-three years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration by the Court. R. 28, 260. Plaintiff applied for benefits based on allegations of both physical and mental disabilities, including: depression, suicidal

thoughts, high blood pressure, diabetes, an inability to see out of his left eye, and low back pain. R. 223, 295. Plaintiff earned his General Educational Development certificate, as well as a barbering diploma from Augusta Tech College, and he took some online college courses at some point during the thirteen years he had been incarcerated for charges related to selling cocaine. R. 30, 54, 69. Prior to his alleged disability, Plaintiff had accrued a relevant work history that included jobs as a material handler and a brick maker/handler. R. 32, 49-55, 83-84. Plaintiff left his last job in October of 2011 because he did not want to comply with instructions from his supervisor. R. 57-58.

After Plaintiff lost his job in 2011, he lived with his brother-in-law for approximately two years, and he testified to collecting unemployment benefits until early 2013, although medical treatment notes state he reported receiving his last unemployment check on September 11, 2013. R. 27, 80, 454. Plaintiff then spent some time at the Augusta Rescue Mission but was barred from that shelter after hitting a fellow resident in the mouth. R. 72. At the time of the administrative hearing, Plaintiff was living at the Garden City Rescue Mission but was unsure how long he would be allowed to continue to stay there. R. 72-73.

The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 101-21, 124-32. Plaintiff requested a hearing before an ALJ, R. 133-34, and the ALJ held a hearing on June 10, 2014. R. 40-100. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as from Louise H. Walker, a Vocational Expert ("VE"). Id. On July 18, 2014, the ALJ issued an unfavorable decision. R. 18-39.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since March 21, 2013, the alleged onset date (20 C.F.R. § 404.1571 *et seq.*).

2. The claimant has the following severe impairments: diabetes mellitus with diabetic retinopathy and macular edema; hypertension; degenerative disc disease of the lumbar spine; obesity; and bipolar disorder (20 C.F.R. § 404.1520(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).

4. The claimant has the residual functional capacity ("RFC") to perform a range of light work, as defined in 20 C.F.R. § 404.1567(b) with additional limitations.[1] In particular, the claimant can lift or carry up to 20 pounds occasionally and 10 pounds frequently. He can stand or walk for approximately 6 hours of an 8-hour workday and sit for approximately 6 hours of an 8-hour workday with normal breaks. Additionally, he can frequently balance, kneel, crawl and climb stairs and ramps, only occasionally stoop or crouch, but he can never climb ladders, ropes, and scaffolds. He must avoid concentrated exposure to unprotected heights and dangerous machinery. He can perform no work requiring good peripheral visual acuity or depth perception. Due to his mental condition, he is further restricted to simple, routine, repetitive tasks, involving no fast-paced production requirements, only simple work-related decisions, few work-place changes, only occasional, superficial interactions with the public, and only occasional interactions with co-workers. In light of this RFC, the claimant is capable of performing past relevant work as a material handler of bricks. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. § 404.1565).

---

[1]"Light work" is defined as work that involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

R. 23-32.

Because the ALJ determined that Plaintiff could perform his past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from March 21, 2013, through the date of the decision, July 18, 2014. R. 32-33. When the Appeals Council ("AC") denied Plaintiff's request for review, R. 1-4, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to assign proper weight to multiple medical opinions in the record; (2) the ALJ failed to properly evaluate Plaintiff's credibility; and (3) the ALJ improperly utilized the VE to determine that Plaintiff could perform his past relevant work. See doc. no. 12 ("Pl.'s Br."). The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. See doc. no. 13 (Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding

this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III.    DISCUSSION

Plaintiff argues the ALJ failed to properly analyze multiple medical opinions in the record.  In particular, he asserts that the ALJ failed to give enough weight to the opinion of treating physician, Kevin Murrell, M.D., gave too much weight to the opinion of retinal specialist Harinderjit Singh, M.D., and did not weigh at all the opinion of Dr. John Whitley, a psychologist who performed a one-time consultative examination.  Plaintiff further argues that the ALJ improperly analyzed Plaintiff's credibility, and when this issue is combined with the failure to properly analyze the medical opinions noted above, the ALJ did not present a valid hypothetical to the VE when determining Plaintiff could perform his past relevant work.  Plaintiff also faults the ALJ for not resolving alleged discrepancies between occupational characteristics of jobs in a publication which references the Dictionary of Occupational Titles ("DOT") and the VE's testimony about job requirements for Plaintiff's past relevant work.

As explained below, the ALJ did not err in his consideration of the medical opinions or Plaintiff's credibility.  Likewise, the ALJ did not err in his use of the VE at the hearing to determine that Plaintiff could perform his past relevant work as a material handler of bricks.  Therefore, none of Plaintiff's arguments form a valid basis for reversal or remand.

### A.    The ALJ Properly Weighed the Expert Opinions.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight.  Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987).  "The [Commissioner] must specify what weight

is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding daily activities).

When considering how much weight to give a medical opinion, the ALJ must consider a number of factors:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

Forsyth v. Comm'r of Soc. Sec., 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R § 404.1527(c)). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5). However, Social Security Ruling ("SSR") 96-6p provides that findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments must be treated as expert

opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). Lastly, under SSR 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p, 1996 WL 374183, at *1, 2 (July 2, 1996); see also 20 C.F.R. § 404.1527(d).

Nor is the ALJ required, as implied by Plaintiff, (Pl.'s Br., p. 12), to formulate an RFC based on the opinion of a physician. Rather, the ALJ determines the RFC based on an analysis of all the relevant record evidence. 20 C.F.R. §§ 404.1545(a) & 404.1546(c). As described above, the ALJ must give consideration to physician opinions in accordance with the applicable rules and regulations, but as the Commissioner explains, (Comm'r's Br., pp. 4-5), the ALJ is not constrained to formulating the RFC based solely on such opinions. See Langley v. Astrue, 777 F. Supp.2d 1250, 1258 (N.D. Ala. 2011) (explaining that Eleventh Circuit "does not require an RFC from a physician" to deny disability benefits) (citing Green v. Soc. Sec. Admin., 223 F. App'x 915, 923-24 (11th Cir. 2007). In any event, the ALJ also relied on the opinion of state agency consultant, Antoinette Thaxton-Brooks, M.D., that Plaintiff could perform light work. R. 32 (citing Ex. 3A (R. 109-20)). The opinion of Dr. Thaxton-Brooks must be treated as expert opinion evidence of a nonexamining source at the ALJ and AC levels of administrative review. See SSR 96-6p, 1996 WL 374180, at *1.

### 1. The ALJ Properly Assessed the Opinions of Plaintiff's Treating Physicians.

Plaintiff claims the ALJ erred in failing to accept the opinion of Plaintiff's treating psychiatrist, Dr. Murrell, in a four-sentence, open letter dated October 17, 2013, that Plaintiff

"should be considered disabled and unemployable." R. 447. On March 24, 2014, Dr. Murrell also completed a three-page, check the box "Mental Capacity Assessment" provided by Plaintiff's attorney, in which Dr. Murrell opined Plaintiff had (1) extreme limitations with understanding and memory, (2) marked or extreme limitations with sustained concentration and persistence, (3) moderate to extreme limitations with social interaction, and (4) moderate to extreme limitations in adaptation. R. 967-69. These limitations, if credited, would prevent Plaintiff from returning to his past relevant work. Although the form asks for a description of "the medical/clinical findings that support" the various assessments, Dr. Murrell failed to write anything to support his conclusions except for the understanding and memory section, in which he simply wrote, "poor memory – attention problem." R. 967. Moreover, in a treatment note from the same date, Plaintiff's complaints were "all physical in nature," but "the main thing he needs today is to have paperwork completed for his lawyer regarding his disability." R. 974.

The ALJ properly rejected the severe limitations suggested by Dr. Murrell, explaining that no objective clinical findings of Dr. Murrell, or any other physician, support the generic conclusions and extreme limitations suggested. R. 31. The ALJ also correctly stated that although a properly supported medical opinion of a treating physician may be entitled to special significance, the ultimate disability determination always remains with the Commissioner. R. 31 (citing SSR 96-5 and 20 C.F.R. § 404.1527(d)). Plaintiff's citations to various treatment notes describing Plaintiff's subjective complaints at various appointments do nothing to undercut the ALJ's analysis on this point. Indeed, Plaintiff identifies no objective medical findings or treatment plans showing he received treatment consistent with his claims or the severe limitations suggested by Dr. Murrell's conclusory letter and check-the-box assessment.

Furthermore, in some of the records Plaintiff cites, the notes actually refute Plaintiff's claimed severe psychological issues related to suicidal and homicidal ideations. For example, on August 14, 2013, Plaintiff was oriented to person, place, and situation. R. 410. He was not agitated, his thought content was normal, he had no delusions, he had no concentration deficits, and he had no suicidal or homicidal thoughts. Id. Plaintiff did, however, test positive for THC and opiates, and he admitted getting pain pills from his brother and daily THC use. Id. The notes also state, "relapsed on crack/marijuana last week." R. 411.

Moreover, the multiple psychiatric hospital admissions related to suicidal and homicidal ideation referenced in Plaintiff's briefing, (Pl.'s Br., p. 13), must be viewed in the context, as fully presented by the ALJ, of an initial hospital admission on March 21, 2013, for three days, followed by commencement of outpatient care at which Plaintiff admitted he had relapsed on crack and marijuana. R. 302, 304, 438. Starting in December 2013, Plaintiff was hospitalized after a family argument but also tested positive for marijuana and opiates. R. 29. By late January of 2014, hospital notes indicate Plaintiff had been refused as a patient because he was going from one facility to another reporting the same symptoms. R. 29, 814 ("pt. just left ECRH and went straight to the hospital with the same complaint like hearing voices and wanting to kill himself and others").

Plaintiff was described as "manipulative and homeless." R. 723, 814. Notes from an attempted psychiatric admission dated January 30, 2014 state, "At this point there is no psychiatric program . . . willing to take [Plaintiff]. He confabulates and is looking for basically a place to stay and uses his stories to obtain that." R. 683. Given the lack of credence given to Plaintiff's "stories" by the professionals responsible for evaluating the severity of Plaintiff's

psychiatric condition, citations to these episodes of presentation for suicidal and homicidal ideation hardly support the extreme limitations offered by Dr. Murrell.

To the extent Plaintiff also mentions another treating physician, Robert Campbell, M.D., in the same argument concerning the weight given to Dr. Murrell's opinion, (Pl.'s Br., p. 11), Plaintiff does not offer any argument to suggest the ALJ improperly discounted Dr. Campbell's opinion as not supported by objective clinical findings. R. 31. The ALJ acknowledged Dr. Campbell's one paragraph, open letter dated March 11, 2014 in which Plaintiff's name was inserted in a form letter stating he was under Dr. Campbell's care and could not complete community service if it involved physical labor. R. 31, 962. The ALJ also acknowledged Dr. Campbell completed the three-page, check the box Residual Functional Capacity Questionnaire provided by Plaintiff's counsel in which he opined Plaintiff could walk less than one city block, stand or walk for five minutes at a time, sit for one hour in an eight-hour workday, stand or walk for one hour in an eight-hour workday, would need to take frequent unscheduled breaks in a workday, and is physically unable to work on a sustained basis. R. 31, 964-65.

Notably, Dr. Campbell provided no answers to a whole section of the Questionnaire related to lifting and carrying and provided no documentation for any of his opinions. In fact, Dr. Campbell's treatment notes suggest Plaintiff's back pain was treatable with pain medication, and he was not routinely followed for back pain. See, e.g., R. 1023-24 (reason for May 6, 2014 appointment is Viagra refill; assessed for erectile dysfunction and diabetes mellitus; scheduled for two month follow up for chronic care of diabetes and hypertension). The ALJ's analysis of the opinions of Plaintiff's treating physicians who imposed severe

restrictions on Plaintiff's mental and physical abilities without benefit of objective support is supported by substantial evidence.

### 2. The ALJ Properly Assessed the Opinions of One-Time Examining Physicians.

Plaintiff argues the ALJ "purportedly afforded great weight to the opinion by Dr. Singh," but did not craft an RFC based on Dr. Singh's actual findings. Pl.'s Br., p. 11-12. Plaintiff also maintains the ALJ failed to weigh the opinion of one-time consultative examiner, Dr. Whitley, who performed a psychological evaluation. Id. at 13-14. Neither argument has merit.

As to Dr. Singh, a retinal specialist who examined Plaintiff on May 2, 2013, at the request of Dr. Campbell, Dr. Singh diagnosed diabetes with opthalmic manifestations, moderate nonproliferative diabetic retinopathy, and diabetic macular edema. R. 26, 364, 368. He determined Plaintiff's corrected visual acuity to be 20/25 in the right eye and 20/100 in the left eye, and he noted that Plaintiff reported the ability to drive. R. 26, 363. In support of Plaintiff's DIB application, counsel asked Dr. Singh to complete a Residual Functional Capacity Questionnaire. R. 907-08. Although Dr. Singh offered opinions on the Questionnaire related to physical capabilities unrelated to Plaintiff's vision, the ALJ credited great weight to the limitations "related essentially only to the claimant's vision" because those were supported by Dr. Singh's test results in the record. R. 31, 359-69. Thus, the RFC included a restriction in accordance with Dr. Singh's test results that precludes Plaintiff from performing work requiring good peripheral visual acuity or depth perception. R. 25. Because the ALJ credited Dr. Singh's limitations based on vison testing, R. 31, Plaintiff's arguments concerning Dr. Singh's non-vision related capabilities form no basis for remand.

As to Dr. Whitley, he conducted his one-time consultative psychological examination of Plaintiff on June 3, 2013.  R. 393-97.  As discussed in more detail below, Dr. Whitley summarized that Plaintiff has a long history of drug addiction and is unhappy about his life situation, which includes lack of money and no place of his own to live.  R. 396.  Plaintiff has a history of several employments requiring him to follow multiple step instructions but also has a history of being fired because of breaking rules.  Id.  Plaintiff does not contend that the ALJ failed to acknowledge Dr. Whitley's examination.  He does argue, however, that the ALJ discussed few details of Dr. Whitley's findings and failed to explain the weight he assigned to the findings.

As a general rule, the opinion of a one-time examiner is not entitled to great weight. Stone v. Comm'r of Soc. Sec., 544 F. App'x 839, 842 (11th Cir. 2013); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004).  The law is clear, "The ALJ does not have to defer to the opinion of a physician who conducted a single examination, and who was not a treating physician."  Stone, 544 F. App'x at 842 (citing McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987)).  However, as part of the duty to develop a full and fair record, the ALJ must "make clear the weight accorded to the various testimony considered."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  In the absence of a statement from the ALJ concerning the weight given to different medical opinions and the reasons for assigning such weight, the reviewing court will be unable to determine whether the decision is supported by substantial evidence.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011).

Plaintiff concedes the ALJ discussed the findings from Dr. Whitley's one-time psychological examination, but he contends that the ALJ did not provide enough detail about the findings of the examination or explain the weight given to Dr. Whitley's opinion.  Pl.'s Br.,

p. 14.  In particular Plaintiff focuses on Dr. Whitley's opinion that Plaintiff had a poor ability to interact with coworkers in a stable manner and appeared "vulnerable to decompensate under excessive stress demands and changes."  Id.; R. 396.  Plaintiff's arguments on this point fail for two reasons.

First, contrary to Plaintiff's assertion, the ALJ provided a detailed recitation of Dr. Whitley's findings and diagnostic impressions.  R. 28.  After diagnosing Plaintiff with cannabis dependence, cocaine dependence in remission, per patient, dysthymic disorder, and antisocial personality disorder, Dr. Whitley then concluded that Plaintiff retained the mental capacity for work.  R. 28, 396.

Second, the discussion of Dr. Whitley's report came in the midst of the ALJ's lengthy recitation of the medical evidence of record that provided the explanation for the immediately preceding, step four RFC determination.  R. 25-32.  Indeed, the ALJ incorporated Dr. Whitley's opinion of a poor ability to interact with co-workers and vulnerability to decompensation under excessive stress when the RFC limited Plaintiff to "simple, routine repetitive tasks, involving no fast-paced production requirements, only simple work-related decisions, few work-place changes, only occasional, superficial interactions with the public, and only occasional interactions with co-workers."  R. 25.  Thus, contrary to Plaintiff's contention, the ALJ did impliedly assign weight to Dr. Whitley's opinion, (Ex. 10F), in the context of his discussion of the entirety of the relevant medical evidence and then including Dr. Whitley's findings as limitations in the RFC.  See Hardman v. Colvin, No. 3:12-CV-42, 2013 WL 3820694, at *6 (M.D. Ga. July 23, 2013) ("It is clear that the ALJ gave weight to the opinion of [the consultative examiner] as it was made manifest by the ALJ's RFC finding."); see also Turner v. Comm'r of Soc. Sec., No. 6:12-cv-937, 2013 WL 5330430, at *4 (M.D. Fla.

Sept. 23, 2013) ("Failure to state the weight given to a medical opinion is generally harmless where the opinion at issue does not contradict the ALJ's RFC determination." (citing <u>Wright v. Barnhart</u>, 153 F. App'x 678, 684 (11th Cir. 2005)). The ALJ did not err in his analysis of Dr. Whitley's opinion.

**B.     The ALJ Properly Analyzed Plaintiff's Subjective Complaints.**

Plaintiff also argues the ALJ erred in assessing his credibility. Pl.'s Br., pp. 15-16. In particular, Plaintiff claims the ALJ improperly interpreted his testimony about using cocaine, and placed too much emphasis on Plaintiff's testimony concerning his ability to participate in everyday activities. <u>Id.</u>

**1.     The Standard for Evaluating Subjective Complaints.**

The Eleventh Circuit has established a three-part standard for evaluating a claimant's subjective complaints. <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991). Under the Eleventh Circuit's standard, Plaintiff must show: (1) evidence of an underlying medical condition, and either (2) objective medical evidence that confirms the severity of the alleged symptoms or the restriction arising therefrom, or (3) that the objectively determined medical condition is such that it can reasonably be expected to give rise to the claimed restriction. <u>Id.</u> When discrediting a claimant's subjective allegations of disabling symptoms, the ALJ must articulate "explicit and adequate" reasons for doing so, or "the implication must be so clear as to amount to a specific credibility finding." <u>Foote v. Chater</u>, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Under the applicable regulations, the ALJ must consider "all evidence, including subjective statements about the intensity, persistence, and functionally limiting effects of pain [as well as] the objective medical evidence, laboratory findings and statements from treating or nontreating sources about how the symptoms affect the claimant in deciding the issue of

disability." <u>Jarrell v. Comm'r of Soc. Sec.</u>, 433 F. App'x 812, 814 (11th Cir. 2011) (citing 20

C.F.R. § 404.1529(c)(4)).

"Credibility determinations are, of course, for the [Commissioner], not the courts." <u>Ryan</u>

<u>v. Heckler</u>, 762 F.2d 939, 942 (11th Cir. 1985). Moreover, this Court is required to uphold the

Commissioner's credibility determination if it is supported by substantial evidence. <u>Fortenberry</u>

<u>v. Harris</u>, 612 F.2d 947, 950 (5th Cir. 1980).[2] As the Eleventh Circuit explained:

> Although this circuit does not require an explicit finding as to credibility, . . . the implication must be obvious to the reviewing court. The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.

<u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1210-11 (11th Cir. 2005) (internal quotation marks and

citations omitted). As explained below, the ALJ properly conducted the <u>Holt</u> analysis and

reached the conclusion that Plaintiff's medically determinable impairments could reasonably be

expected to cause the alleged symptoms, but his subjective complaints concerning the intensity,

persistence, and limiting effects of the symptoms were not substantiated by the total evidence of

record and were not entirely credible. R. 26.

### 2. The ALJ Thoroughly Discussed and Properly Discredited Plaintiff's Subjective Complaints.

As explained by the Commissioner in her brief, the ALJ offered numerous reasons for

discounting Plaintiff's credibility. Comm'r Br., pp. 17-22. First, the ALJ conducted a

thorough and sifting examination of the medical evidence of record. R. 24, 26-32. As discussed

in detail above, the ALJ carefully examined the opinions of treating physicians Dr. Murrell and

---

[2]In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

Dr. Campbell, as well as retinal specialist Dr. Singh. The treatment notes of Drs. Murrell and Campbell simply failed to support the level of limitation asserted not only in their opinions, but also in Plaintiff's testimony concerning his functional abilities. Likewise, the ALJ incorporated Dr. Singh's visual limitations in the RFC but also noted Dr. Singh considered Plaintiff to be a malingerer. R. 31, 908.

Second, Plaintiff argues the ALJ placed too much emphasis on Plaintiff's routine of going to McDonald's for breakfast, riding a city bus to the public library where he reads, and pursuing medication for erectile dysfunction, to show that Plaintiff could engage in work activities. R. 30. He argues that participating in everyday activities of short duration should not disqualify him from disability. See Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir. 1997). However, the ALJ pointed to these daily activities not simply to conclude Plaintiff could engage in work, but to specifically refute Plaintiff's claims of particular limitations. For example, despite Plaintiff's claims of severely limiting mental issues, his daily activities showed an ability to figure out the city bus system and arrive at the library to focus and concentrate on reading, which also showed he could see well enough to read. R. 24. They also show, consistent with Dr. Whitley's observation of no suicidal ideation, homicidal ideation, or psychotic symptoms, that Plaintiff could function in public and get along well enough with others to pursue sexual relations. R. 28, 30.

Third, the ALJ also extensively reviewed the record with respect to Plaintiff's claimed back pain. R. 26-30. The ALJ recounted results of physical examinations showing only slight narrowing of disc space, full ranges of motion, and treatment with only medication. R. 27-28 (citing Exs. 11F, 17F, 26F, 36F). Moreover, the ALJ noted that Plaintiff had been referred to an orthopedist in April 2014, but there was no report from an orthopedist in the record. R. 28.

Minimal or no treatment for an alleged disabling condition may be validly considered by an ALJ in discrediting a claimant's subjective complaints. Castle v. Colvin, 557 F. App'x 849, 853 (11th Cir. 2014); Gamble v. Colvin, No. 5:13-CV-01959-SLB, 2015 WL 2095064, at *6 (N.D. Ala. May 5, 2015). Likewise, the ALJ noted that during a time when Plaintiff claimed to be disabled, he had been collecting unemployment checks, R. 27, another valid piece of evidence inconsistent with claims of disability. Ricker v. Comm'r of Soc. Sec., No. 5:13-CV-479-Oc-18PRL, 2014 WL 6610849, at *10 (M.D. Fla. Nov. 21, 2014) (collecting cases recognizing inconsistency of receipt of unemployment benefits during same period as claimed disability).

Fourth, Plaintiff fails in his attempt to assign error in the credibility determination based on an exact timeline of his last use of cocaine. Regardless of exactly when Plaintiff may have last used cocaine in relation to the timing of his sister's death, Plaintiff's history of drug use and thirteen years of imprisonment on cocaine-related charges is not in dispute, R. 75, and may be validly considered by an ALJ in assessing a claimant's credibility. Douglas v. Comm'r of Soc. Sec., 486 F. App'x 72, 75 (11th Cir. 2012); Mackinder v. Astrue, No. 8:11-CV-2777-T-17EAJ, 2013 WL 497620, at *4 (M.D. Fla. Jan. 16, 2013), adopted by 2013 WL 489144 (M.D. Fla. Feb. 8, 2013). In any event, treatment records from Dr. Campbell dated May 7, 2013, which would have post-dated his sister's death, state that Plaintiff reported having not used marijuana in about one week and not having used cocaine in one month. R. 380. Moreover, a urine screen conducted on Plaintiff on December 16, 2013, was positive for marijuana and opiates. R. 29, 496. The ALJ also recognized that during this December 2013 to January 2014 period, treatment facilities eventually refused to take Plaintiff as a patient because he was going from one facility to the next reporting the same symptoms, resulting in a description of Plaintiff as "manipulative and homeless." R. 29, 683, 723, 814.

18

In sum, the ALJ relied on numerous pieces of information in assessing Plaintiff's credibility. The ALJ did not rely solely on Plaintiff's reported daily activities, nor solely on the timing of when Plaintiff claims to have stopped using cocaine. Rather, the ALJ properly considered the record evidence in total in discrediting Plaintiff's subjective complaints, and this argument forms no basis for remand.

### C. The ALJ Properly Concluded Plaintiff's RFC Allowed Him to Perform Past Relevant Work.

Lastly, Plaintiff argues the ALJ improperly utilized the VE to determine that Plaintiff could perform his past relevant work. Plaintiff asserts the ALJ did not present a valid hypothetical to the VE when determining Plaintiff could perform his past relevant work because the ALJ did not include the extreme mental limitations proposed by Dr. Murrell, as described above. Plaintiff also faults the ALJ for not resolving alleged discrepancies between occupational characteristics of jobs in the Selected Characteristics of Occupations ("SCO"), a publication providing more detailed occupational data than that contained in the Revised Fourth Edition DOT, and the VE's testimony about job requirements for Plaintiff's past relevant work.[3] Neither argument has merit.

### 1. The Role of the VE.

Social Security regulations state an ALJ may rely on the knowledge or expertise of a VE in determining whether there are jobs a claimant can perform. Specifically, an ALJ may consult a VE to determine whether past relevant work can be done: "A vocational expert or specialist

---

[3]The SCO "was produced under an Interagency agreement with the Social Security Administration by the U.S. Employment Service" and provides "adjunct data on specific vocational training time, physical demands, and environmental conditions . . . for each occupation defined in the [DOT]." See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, U.S. Dep't of Labor, Employment and Training Admin., 1993, pp. v-vi, *available at* http://www.nosscr.org/sco/sco.pdf.

may offer relevant evidence within his or her expertise or knowledge concerning physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). The VE may also provide expert testimony in response to a hypothetical question about whether a person with certain physical and mental limitations can "meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." Id.; see also Simpson v. Comm'r of Soc. Sec., 423 F. App'x 882, 884 (11th Cir. 2011) ("The ALJ may rely on a VE's testimony regarding the physical and mental demands of the claimant's past work."). A VE need not produce detailed reports or statistics in support of his or her testimony, but there must be a reasoned basis for the testimony. Bryant v. Comm'r of Soc. Sec., 451 F. App'x 838, 839 (11th Cir. 2012); Curcio v. Comm'r of Soc. Sec., 386 F. App'x 924, 926 (11th Cir. 2010); Thibeault v. Comm'r of Soc. Sec., No. 8:13-cv-586, 2013 WL 6498390, at *13 (M.D. Fla. Dec. 11, 2013).

## 2. The ALJ Properly Relied on the VE's Testimony.

The ALJ asked the VE if a hypothetical individual of the same age, education, and past work experience as Plaintiff were limited to light work and had the physical and postural limitations identified in the RFC could perform Plaintiff's past relevant work as a brick handler. R. 85. The VE first answered, "No," based on an exertional classification of heavy work and the description contained in the DOT. Id. But when the ALJ asked the VE to consider the work as Plaintiff had described performing it, (R. 53-55, 86), she answered in the affirmative. R. 86-89. When Plaintiff's counsel added the restriction of having a difficult time with depth perception because the left eye vision was restricted to only gross acuity, the VE testified that none of the

jobs she identified, including Plaintiff's past work as brick handler, would be eliminated because depth perception was not listed as one of the physical requirements. R. 92-93.

Plaintiff argues that because the SCO lists depth perception as a frequent requirement for Plaintiff's past relevant work of a material handler, the VE's testimony was inaccurate and therefore cannot serve as substantial evidence to support the ALJ's determination that Plaintiff was not disabled because he could perform his past relevant work. Pl.'s Br., p. 17 (citing SCO, p. 124, job #929.687-030, material handler in any industry). Plaintiff also claims the ALJ improperly failed to confirm with the VE that all of her testimony was consistent with the DOC and SCO. Pl.'s Br., p. 18.

The underlying assumptions of the hypothetical questions posed to the VE must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."). However, a hypothetical question need not incorporate alleged impairments that the ALJ has properly discredited or found to be unsupported by the medical evidence. Crawford, 363 F.3d at 1161. Thus, to the extent Plaintiff argues that the ALJ formulated an incorrect RFC based on improper treatment of the medical opinions in the record, (Pl.'s Br., pp. 18-19), as explained in detail above, there was no error by the ALJ with respect to his analysis of these opinions. Accordingly, there was no error in excluding the extreme mental restrictions proposed by Dr. Murrell in the hypothetical presented to the VE.

As to the discrepancy with the SCO, the ALJ presented a hypothetical to the VE based on the RFC for light work with the restrictions ultimately contained in the ALJ's written opinion and asked the VE if the hypothetical individual could perform any of Plaintiff's past work either as he described it or as listed in the DOT. R. 84-89. When counsel and the ALJ discussed how to account for poor sight in just one eye when Plaintiff also wore glasses, they agreed that adding the limitation of no work with peripheral acuity or depth perception would be appropriate, and the VE agreed that the work in the hypothetical could still be performed, work that included handling bricks as Plaintiff testified he had performed the job. R. 92-94. Thus, the "discrepancy" Plaintiff has identified with the SCO is a red herring because Plaintiff testified as to how he performed the job, and the ALJ and the VE both stated that they were basing their conclusions on the information provided by Plaintiff concerning how he performed his prior work. R. 32, 89.

Additionally, pursuant to Social Security Ruling 00-4p, the ALJ "has an affirmative responsibility to ask about any possible conflict between [the] VE . . . evidence and information provided in the DOT." SSR 00-4p, 2000 WL 1898704, at *4. The ALJ must elicit an explanation from the VE "[w]hen there is an apparent unresolved conflict." Id. at *2; see also Leonard v. Comm'r of Soc. Sec., 409 F. App'x 298, 301 (11th Cir. 2011) (ALJ must elicit a reasonable explanation for discrepancy between DOT and VE testimony). Nevertheless, "[e]ven assuming that an inconsistency existed between the testimony of the [VE] and the DOT, the ALJ did not err when, without first resolving the alleged conflict, he relied on the testimony of the [VE]. Our precedent establishes that the testimony of a [VE] 'trumps' an inconsistent provision of the DOT in [the Eleventh] Circuit." Miller v. Comm'r of Soc. Sec., 246 F. App'x 660, 662 (11th Cir. 2007) (citing Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1999)). Thus, even if

the Court were to assume that the SCO, a companion document to the DOT, had to be given the same consideration as the DOT, the ALJ was not required to prefer the SCO to the testimony of the VE.

In light of Plaintiff's RFC, the requirements of his past work as a material handler of bricks as Plaintiff described the job, and the testimony of the VE, the ALJ properly concluded Plaintiff could perform his past relevant work, and therefore was not disabled.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 9th day of December, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA